UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE FRANKLIN DOBRA, # 186732,

        Petitioner,

v.                                            Case Number: 08-CV-10684
                                            Honorable George Caram Steeh

THOMAS BELL,

        Respondent.
_____/

**OPINION AND ORDER**
**(1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND (3) DENYING AN APPLICATION FOR LEAVE TO PROCEED ON APPEAL *IN FORMA PAUPERIS***

      This is a habeas case brought under 28 U.S.C. § 2254. Petitioner George Franklin Dobra, a state prisoner confined at the Cooper Street Correctional Facility[1] in Jackson, Michigan, filed this habeas petition on February 19, 2008, asserting that he is being held in violation of his constitutional rights. On July 14, 2003, following a two-day bench trial in Oakland County circuit court, Dobra was convicted of two counts of criminal sexual conduct, second degree. MICH. COMP. LAWS § 750.520(c)(1)(a). He was originally charged with four separate counts of second-degree criminal sexual conduct involving four complainants, all sisters, under the age of thirteen. Dobra was the

---

    [1]At the time Dobra filed his habeas petition, he was incarcerated at the Carson City Correctional Facility in Carson City, Michigan. He has since been transferred to the Cooper Street Correctional Facility. The proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254 Cases; *see also Edwards v. Johns*, 450 F.Supp.2d 755, 757 (E.D. Mich. 2006). In most cases where a petitioner is transferred to a different facility after the petition has been filed, the Court would order an amendment of the case caption. However, because the Court is denying the petition in this case, it finds no reason to do so.

boyfriend of the four complaining witnesses' mother. The sisters[2] and their ages at the time of trial were as follows: (1) T.S., twelve, (2) C.S., eleven, (3) Ch.S., ten, and (4) A.S., nine. Dobra lived with his girlfriend and her four daughters in their trailer home from December 2000 until April 2001. Initially, Dobra entered no-contest pleas to two counts of criminal sexual conduct in contemplation of the remaining two counts being dismissed. However, the plea was withdrawn over a disagreement on sentencing and Dobra went to trial on all four counts. His convictions involved the two older sisters, C.S. and T.S. He was acquitted of the two charges involving the two younger sisters, Ch.S. and A.S. On July 25, 2003, he was sentenced, as a habitual offender, fourth offense, to two concurrent prison terms of six to thirty years. For the reasons stated, the Court will deny the petition. The Court will also decline to issue Dobra a certificate of appealability and will deny him an application for leave to proceed on appeal *in forma pauperis*.

## I. BACKGROUND

Four months before the bench trial was conducted, Dobra entered no-contest pleas to the same two counts for which he was convicted. Those pleas were entered pursuant to a sentencing agreement under *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993). Dobra was to be sentenced to serve one year in the county jail on the front end of a term of probation. However, the pleas were withdrawn at the subsequent sentencing hearing, and the matter was set for trial on all four counts. The trial judge stated that she would not follow the sentencing agreement.

Dobra then moved to have the trial court remove his court-appointed counsel and appoint a new attorney to represent him at trial. The following colloquy took place.

---

[2]The Court will use the initials of the four sisters in order to protect their identities.

> [DOBRA'S COUNSEL]: I asked the Court clerk to schedule this matter for this morning. The Court knows the history of the case. Mr. Dobra has tried to fire me twice. I received a phone call from his girlfriend indicating I am now fired because of what occurred last Friday with the Court not going along with the [*Cobbs*] arrangement.
>
> If he wants to fire me, that's all right. Maybe he needs another attorney. The trial is set for the 20th.
>
> THE COURT: He can get another lawyer or he can represent himself, but we're not going to adjourn the trial, so –
>
> [DOBRA'S COUNSEL]: Are you going to appoint another lawyer for him?
>
> THE COURT: No.
>
> [DOBRA'S COUNSEL]: All right.
>
> THE COURT: No, I will not.
>
> [DOBRA'S COUNSEL]: Do you want to discharge me?
>
> THE COURT: You either represent yourself, or hire your own lawyer, or keep [your present attorney], but we're not adjourning the trial.
>
> [DOBRA'S COUNSEL]: Okay, you Honor. But I wanted the record clear
>
> THE COURT: Absolutely.
>
> [DOBRA'S COUNSEL]: -- that that's what [h]is desire is , just to terminate me.
>
> THE COURT: So noted. We've got a record of it.
>
> [DOBRA]: If I get another lawyer, I'll let the Court know.

Hr'g Tr. 3-4, May 9, 2003.

Trial in this case began on July 10, 2003. Prior to trial, defense counsel informed the court that Dobra wished to waive his right to a jury trial, contrary to his advice. The trial court accepted the waiver.

The prosecution's theory of the case was as follows. Dobra was the boyfriend of the four

complainant's mother. He moved into their trailer home in Waterford, Michigan, in December 2000 and lived there until April 2001. The girls and their mother then moved into their aunt's trailer in Holly, Michigan. Dobra sexually assaulted the girls while he lived with them. He touched their breasts and their vaginas. C.S. was first to testify.

C.S. testified that Dobra touched her breast with the back of his hand while she was lying on a mattress on the floor with him and her mother. She said she was ten or eleven-years old at the time. C.S. said the incident occurred on the last night that she lived in the trailer.

T.S. testified next. She said one night while the family was watching television in the living room, Dobra rubbed her breasts. She testified that it occurred while they were sitting together on the floor in front of the couch. She said she was ten or eleven-years old at the time.

Ch.S. testified that Dobra put his hand down her pants and into her underpants while she was living at her aunt's trailer. She said he touched the top of her front spot with his finger, when she was sitting on his lap. On cross-examination, she testified that she did not remember telling the investigating officer that Dobra had put his penis in her vagina and her anus. She admitted telling the people at the Care House that she was not penetrated anally or vaginally because she did not want to be examined by a doctor. She said she lied to the state trooper because she wanted Dobra removed from her house. On re-direct, she said she did not know why the judge should believe her when she had lied before.

A.S. testified that Dobra touched her vagina while they lived in a trailer in Waterford. She said that he also touched her vagina with his finger when they lived with her aunt in Holly. She was not able to identify Dobra in the courtroom. On cross-examination, A.S. testified that she did not like Dobra and that she and her sisters wanted him out of the house. She said she never told her

4

mother or her father about the incidents until she and her sisters talked about getting rid of Dobra, while they were in a park together in Romulus during a visit with their father.

Michigan State Police Officer, Kevin Amenson, the officer in charge of the case, testified that he observed all of the complainants' interviews that took place at the Care House. He also interviewed Dobra. Dobra was not under arrest at the time of the interview. Officer Amenson also observed a second interview of Dobra that was conducted by Detective Brian Cole.

Officer Amenson further testified that Dobra told him that, during the last night that the family spent in the Waterford trailer, he slept with the mother and C.S. Dobra told the officer that he had instructed T.S. to wear a bra. Officer Amenson said that Dobra was visibly shaken when he was told about the allegations of penetration made by A.S. On cross-examination, Officer Amenson acknowledged that Dobra denied ever touching T.S. or C.S.'s breasts. He denied having any sexual contact with any of the girls.

The prosecution rested after Officer Amenson's testimony. Dobra did not testify. The defense did not present any other witnesses or evidence.

The trial judge found that the prosecution failed to prove the allegations concerning Ch.S. and A.S. beyond a reasonable doubt. She found that Ch.S. was not a credible witness. The trial judge was extremely concerned that A.S. could not identify Dobra in court. However, the trial judge found C.S. and T.S.'s testimony credible beyond a reasonable doubt, and found Dobra guilty of two counts of second-degree criminal sexual conduct.

Dobra's sentencing hearing was held on July 25, 2003. Prior to that hearing, the Oakland County Probation Department had prepared a presentence investigation report regarding Dobra's May 2, 2003, sentencing hearing, which was scheduled pursuant to his no-contest pleas. At that

time, the assistant prosecutor, defense counsel, and the probation officer had all agreed that the appropriate minimum sentence range applicable to Dobra was thirty-six months to 142 months. At the July 25 hearing, the assistant prosecutor argued that Dobra should be assessed twenty-five points for Prior Record Variable 3 and twenty-five points for Offense Variable 13. Those variables had been scored as zeroes for the May 2 hearing. The trial judge agreed with the prosecutor's changed position. Given that, Dobra's minimum sentence range was raised from fifty months to 200 months. The trial judge then sentenced Dobra to two concurrent prison terms of six to thirty years.

Following his sentencing, Dobra filed a timely notice of appeal and appellate counsel was appointed on September 10, 2003. On April 28, 2004, the trial court granted appointed counsel's motion to withdraw and directed Dobra to move for substitute appellate counsel within thirty days. Dobra missed the thirty-day deadline and moved for substitute appellate counsel on June 14, 2004. The trial judge denied his motion for appointment of substitute appellate counsel on June 28, 2004.

Subsequently, on September 29, 2004, Dobra's appeal of right was dismissed for want of prosecution. *People v. Dobra*, No. 250857 (Mich.Ct.App. Sept. 29, 2004).

Dobra then filed a *pro per* delayed application for leave to appeal the trial judge's decision with the Court of Appeals. The Court of Appeals reversed the trial court's denial of his motion for substitute appellate counsel and remanded the case, stating:

> The delayed application for leave to appeal is considered and, the Court orders, pursuant to MCR 7.205(D)(2), that the June 28, 2004, order of the Oakland County Circuit Court denying Defendant's motion for appointment of substitute appellate counsel hereby is REVERSED. The circuit court should have granted defendant's untimely request where a delayed application for leave to appeal was available to defendant at the time he moved for counsel. On remand, the circuit court shall appoint counsel to assist defendant in post[-]conviction and appellate proceedings upon a proper showing of indigence, MCR 2.002. Given that more than 12 months have passed since defendant's convictions, appellant may not challenge the convictions by filing a delayed application under MCR 7.205, but may only

6

> challenge the order by filing a motion for relief from judgment under MCR 6.508(D). The case is REMANDED for further proceedings consistent with this order.

*People v. Dobra*, No. 257955 (Mich.Ct.App. Feb. 14, 2005) (citations omitted).

On March 3, 2005, counsel was appointed and a motion for relief from judgment was filed in the trial court on January 10, 2006, raising the following two issues: (1) the trial court's failure to grant Dobra's motion to discharge his appointed attorney and to appoint substitute counsel was error, and (2) the sentencing guidelines upon which the two concurrent sentences from six to thirty years were based were calculated incorrectly. The trial court denied the motion on March 10, 2006. *People v. Dobra*, No. 2002-183260-FH (Oakland County Circuit Court, Mar. 10, 2006).

Dobra subsequently filed an application for leave to appeal the trial court's March 10, 2006 denial of his post-conviction motion with the Michigan Court of Appeals, raising the following issues:

> I. Was it error for the trial court judge to deny [Dobra's] request for the removal of his court-appointed attorney and the appointment of new counsel prior to the beginning of his trial?
>
> II. Was it error for the trial court judge to assess [Dobra] 25 points for the offense variable 13, continuing pattern of criminal behavior, where the trial judge had acquitted [him] of the same allegations that formed the basis for the assessment made at the time of sentencing?

The Court of Appeals denied the delayed application "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Dobra*, No. 271567 (Mich.Ct. App. Jan. 31, 2007). Dobra's application for leave to appeal the Court of Appeals's decision, filed with the Michigan Supreme Court, was denied on October 17, 2007, "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Dobra*, 480 Mich. 911, 739 N.W.2d 617 (2007).

Dobra filed this habeas action on February 19, 2008. The petition was signed and dated November 28, 2007. In his *pro se* petition, Dobra raises the following claims:

I. The trial court committed plain error and a violation of [his] right to procedural due process under Mich. Const. of 1963, art. 1 § 17; and the U.S. Const. amend. V, XIV where the trial court denied [his] request for substitution of appellate counsel without first showing good cause.

II. The Michigan Constitution grants all defendants who have been convicted by a bench trial or jury trial the right to appeal their convictions, it violates the equal protection and due process under the U.S. Const. amend. XIV and Mich. Const. of 1963, art. 1, §§ 2 and 17; to deny indigent defendants appointment of appellate counsel.

III. It was error for the trial court judge to deny [Dobra's] request for the removal of his court-appointed attorney and the appointment of new counsel prior to the beginning of his trial.

IV. It was error for the trial court judge to assess [Dobra] 25 points for offense variable 13, continuing pattern of criminal behavior, where the trial judge had acquitted [him] of the same allegations that formed the basis for the assessment made at the time of sentencing.

V. Prosecutor misconduct: prosecutor has asserted the alleged victim's testimony has not changed from that of the police report, and allowing false testimony to stand uncorrected as it's inconsistent and witnesses admitted they wanted to "get rid" of defendant prior to the alleged assaults.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this Court's habeas review of state-court decisions. Under the AEDPA, a federal court's review of a habeas proceeding is limited. A federal court may not grant a writ of habeas corpus unless the state adjudication on the merits either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the

8

facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

The Supreme Court clarified that standard in *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

With that standard in mind, the Court proceeds to address Dobra's claims.

### III. DISCUSSION

#### A. Claims I and II--Denied Right to Appointment of Appellate Counsel

In his first and second habeas claims, Dobra argues that he was denied his right of appeal. However, Dobra was afforded appellate counsel and an opportunity to timely request substitute counsel, but failed to timely pursue his rights. Appellate counsel was appointed by the trial judge on September 10, 2003. Counsel filed a timely notice of appeal. On April 28, 2004, the trial court granted appointed counsel's motion to withdraw and directed Dobra to move for substitute appellate counsel within thirty days. Dobra missed the thirty-day deadline and moved for substitute appellate counsel on June 14, 2004. His motion for appointment of substitute appellate counsel was denied by the trial court on June 28, 2004. His appeal of right was therefore dismissed for want of prosecution on September 29, 2004.

Dobra then filed his own *pro per* delayed application for leave to appeal the trial court's

decision with the Court of Appeals. The Court of Appeals issued an order directing the circuit court to appoint substitute counsel for the purpose of preparing a post-conviction motion. The Court of Appeals found that the trial judge improperly denied Dobra's request for substitute counsel where a delayed application for leave was still available to him.

On March 3, 2005, substitute counsel was appointed. On January 10, 2006, counsel filed motions for a new trial and/or a *Ginther*[3] hearing and for relief from judgment, raising two claims: (1) trial court error in denying Dobra's request to discharge trial counsel and for substitute counsel, and (2) miscalculation of sentencing guidelines. The trial court denied the motions finding that Dobra failed to establish entitlement to relief under Mich.Ct.R. 6.508(D):

> Turning first to the prejudice component, Defendant must demonstrate that, but for the alleged errors, Defendant would have had a reasonably likely chance of acquittal. At trial, Complainant, [C.S.] and [T.S.] testified to the sexual touching. Given this testimony, Defendant has failed to demonstrate that the alleged errors would have changed the outcome of the trial.
>
> Defendant also challenges the Court's assessment of 25 points for offense variable 13, continuing pattern of criminal behavior. When challenging the sentence, Defendant must demonstrate the sentence is invalid. Factual findings for sentencing purposes require a mere preponderance of the evidence. At sentencing, the Court found that three or more sexual assaults were proven by a preponderance of the evidence during the trial based on the testimony of [Ch.S.] and [A.S.]. Accordingly, Defendant has failed to demonstrate that the guidelines were scored in error.
>
> In order to obtain post[-]appeal relief under MCR subchapter 6.500, it is Defendant's burden to demonstrate both "good cause" and "actual prejudice." Because Defendant has failed to demonstrate actual prejudice, the Court need not address the good cause component.

*Dobra*, Case No. 2002-183260-FH, at *2-3 (citations omitted).

---

[3]*People v. Ginther*, 390 Mich. 436, 212 N.W.2d 922, 925 (1973) (holding that a defendant who wishes to raise claims on appeal for which an evidentiary record has not been not adequately preserved should seek an evidentiary hearing in the trial court and, if necessary, file a motion for remand in the court of appeals to hold such hearing).

In this case, appellate counsel was appointed to represent Dobra, but was permitted to withdraw without first filing a brief under *Anders v. California*, 386 U.S. 738, 744 (1967) (where the Supreme Court indicated that any request to withdraw should "be accompanied by a brief referring to anything in the record that might arguably support the appeal"). Despite that, Dobra, however, failed to comply with the trial court's order to move for substitute counsel within thirty days. Therefore, this is not a case where appellate counsel fails to meet the requirements of *Anders* causing prejudice. *Allen v. United States*, 938 F.2d 664, 666 (6th Cir. 1991).

Rather, Dobra was not denied appellate counsel but given the opportunity, and direction, by the trial court to file for substitute counsel within thirty days of his first appointed counsel withdrawing from the case. He failed to comply with the order, and consequently, was untimely in filing a direct appeal. Furthermore, Dobra had a full merits review of the claims presented. The trial court, in denying his post-conviction motion, concluded the issues presented were without merit.

The Court finds that the dismissal of Dobra's appeal for lack of progress did not prevent him from challenging his conviction in the Michigan courts. He was able to present his claims in his motion for post-conviction relief. *Hollin v. Sowders*, 710 F.2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren*, 344 F.Supp.2d 1081, 1096 (E.D. Mich. 2004) (counsel's failure to raise certain claims on appeal did not cause the petitioner any demonstrable harm because his claims were eventually considered and rejected on valid state grounds on post-conviction review by the same courts that would have heard his direct appeal).

The state-court ruling on Dobra's post-conviction motion granted him an adequate substitute

11

for direct appellate review and therefore his failure to file a timely request for substitution of counsel did not cause him constitutional injury. Against that backdrop, the Court finds that Dobra is not entitled to habeas relief regarding this claim.

## B. Claim III–Denied Right to Remove Court-Appointed Counsel and Appointment of New Counsel Prior to Trial

In Dobra's third habeas claim, he argues that the trial court erred in failing to adjourn his trial to allow for the appointment of substitute counsel.

Dobra is entitled to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). This right, however, has not been extended to allow an indigent defendant the counsel of his choice: "An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate good cause to warrant substitution of counsel." *United States v. Iles*, 906 F.2d 1122, 1130 (6th Cir. 1990) (footnote and citations omitted). The Sixth Amendment right to the assistance of counsel does not guarantee a criminal defendant that he or she will be represented by a particular attorney. *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1351 (6th Cir. 1993) (citing *Caplin & Drysdale v. United States*, 491 U.S. 617, 624 (1989)). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn*, 740 F.2d 407, 413

(6th Cir. 1984), *cert. denied*, 478 U.S. 1019 (1986) (citing *United States v. Inman*, 483 F.2d 738, 740 (4th Cir. 1973)).

In recognizing that Dobra's request for substitute counsel "may be utilized as a way to delay proceedings or trifle with the court," *United States v. Krzyske*, 836 F.2d 1013, 1017 (6th Cir. 1988)

(citations omitted), the trial court in this case denied his request for substitute counsel on May 9, 2003, stating that he could retain another lawyer, or represent himself, but the court would not adjourn the trial that was scheduled to begin in eleven days, on May 20, 2003. A trial court has broad discretion in determining whether to grant a continuance or a request for the substitution of counsel, particularly when the issue is raised close to the defendant's trial date. *United States v. Vallery*, 108 F.3d 155, 157 (8th Cir. 1997). A defendant in a criminal case is not always entitled to a continuance for the purpose of retaining new counsel. *Id.* "If a defendant's 'attempted exercise of his choice [of counsel] is dilatory, the trial court can require him to proceed with designated counsel.'" *Id.* at 157 ( quoting *United States v. Reeves*, 674 F.2d 739, 748 (8th Cir. 1982).

Here, the trial judge did not deny Dobra his Sixth Amendment right to counsel of choice when it denied his request for substitute counsel, where the request was filed only eleven days before trial was scheduled to begin. The trial court judge was willing to allow him to retain substitute counsel if new counsel was prepared to go to trial on the scheduled date. *United States v. Garner*, 46 F.App'x 278, 287-88 (6th Cir. 2002).

Neither did the denial of Dobra's request for a continuance violate his constitutional rights to effective assistance of counsel, because he presented no specific facts showing that his relationship with his court-appointed counsel had broken down irretrievably. *United States v. Sullivan*, 431 F.3d 976, 981-82 (6th Cir. 2005). The record indicates that counsel vigorously defended Dobra in presenting a fabrication defense. Two of the four counts charged were dismissed, in part, because of counsel's zealous advocacy in challenging the prosecution's proofs. The record fails to demonstrate an irreconcilable conflict between Dobra and counsel during trial. There were only two occasions that Dobra tried to fire trial counsel prior to the May 9, 2003, hearing, and, a

13

third occasion, where he received a call from Dobra's girlfriend attempting to fire him because of what occurred during sentencing discussions. Otherwise, there is no other mention of conflicts between counsel and Dobra. While those facts demonstrate that Dobra may have lacked confidence in his attorney, they fail to show an irreconcilable conflict resulting in a total lack of communication preventing an adequate defense. *Id.*

Against that backdrop, the Court concludes that the state courts' denial of Dobra's claim regarding his motion to substitute counsel was neither contrary to, nor an improper application of, federal law. Dobra is not entitled to habeas relief regarding this claim.

### C. Claim IV–Sentencing Claim

In his fourth habeas claim, Dobra argues that it was error for the trial judge to assess twenty-five points for offense variable 13, continuing pattern of criminal behavior, where she had acquitted him of the same allegations that formed the basis for the assessment made at the time of sentencing. To the extent Dobra challenges the scoring of Michigan Offense Variables in calculating his sentence, his claim is not cognizable in federal habeas-corpus proceedings.

Dobra has no state-created liberty interest in having the Michigan Sentencing Guidelines applied rigidly in determining his sentence. *Lovely v. Jackson*, 337 F.Supp.2d 969, 977 (E.D. Mich. 2004) (citing *Thomas v. Foltz*, 654 F.Supp. 105, 106-07 (E.D. Mich. 1987)). His claim that the offense variables were incorrectly scored thus fails to state a claim upon which habeas relief can be granted. *Shanks v. Wolfenbarger*, 387 F.Supp.2d 740, 752 (E.D. Mich. 2005).

Furthermore, to the extent that Dobra argues that the trial court violated his Sixth

14

Amendment right to a trial by jury by using factors to score his sentencing guidelines which had not been submitted to a jury and proven beyond a reasonable doubt, his claim has no merit. Dobra relies on the United States Supreme Court precedent of *Blakely v. Washington*, 542 U.S. 296 (2004) to support his argument. In *Blakely*, the Supreme Court held that, other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Id.* at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Michigan's sentencing scheme is unlike the state of Washington's determinate sentencing scheme involved in *Blakely*. In Michigan, the maximum sentence is not determined by the trial judge. *People v. Drohan*, 475 Mich. 140, 160-61 (2006). Thus, the *Blakely* decision has no application to Dobra's sentence and the trial court's calculation of the sentencing guidelines range did not violate his Sixth Amendment rights.

Accordingly, Dobra is not entitled to habeas relief regarding his sentencing claim.

### D. Claim V–Prosecutorial Misconduct

In his fifth habeas claim, Dobra argues that the prosecutor wrongfully indicated in closing that the victims' statements had not changed over time. He maintains that the victims' testimony was inconsistent with the police reports and the testimony of investigative officers. He also asserts ineffective assistance of counsel for failing to object to the prosecutor's closing comments.

However, the Court finds that Dobra's claim of prosecutorial misconduct is barred from habeas review by his state-court procedural default in failing to contemporaneously object to the alleged prosecutorial misconduct at trial.

The doctrine of procedural default provides that in all cases in which a petitioner has

15

defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur where, as here, a petitioner fails to comply with a state-procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection. *United States v. Frady*, 456 U.S. 152, 167-69 (1982). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust v. Zent*, 17 F.3d 155, 162 (1994).

Under Michigan law, defendants must preserve issues for appellate review by first objecting in the trial court. *People v. Callon*, 256 Mich.App. 312, 329, 662 N.W.2d 501 (2003). "As a general rule, issues that are not properly raised before a trial court cannot be raised on appeal absent compelling or extraordinary circumstances." *People v. Grant*, 445 Mich. 535, 546, 520 N.W.2d 123, 128 (1994) . See, e.g., *Napier v. Jacobs*, 429 Mich. 222, 235, 414 N.W.2d 862 (1987) (failure to raise a claim of insufficiency of the evidence); *Moskalik v. Dunn*, 392 Mich. 583, 592, 221 N.W.2d 313 (1974) (failure to object to an erroneous jury instruction); *People v. DerMartzex*, 390 Mich. 410, 416-417, 213 N.W.2d 97 (1973) (failure of the defendant to request a limiting instruction on admissibility of prior-acts evidence); *People v. Farmer*, 380 Mich. 198, 208, 156 N.W.2d 504 (1968) (failure to raise the issue of the involuntariness of a confession). Indeed, the United States Supreme Court has recognized a state's right to develop procedural rules that lead to issue forfeiture even

where the procedural rules implicate constitutional protections if the rules serve a legitimate state interest. *Henry v. Mississippi*, 379 U.S. 443 (1965). In this case, Dobra violated the rule by not objecting to the alleged prosecutorial misconduct during closing.

Dobra asserts ineffective assistance of counsel for failing to object to the alleged prosecutorial misconduct. The state court found, as a threshold matter, that it was plain from the materials presented that Dobra failed to demonstrate actual prejudice resulting from the alleged errors. Absent prejudice, there was no need for the trial court to address the issue of cause. Moreover, this Court concludes that because Dobra's claim of prosecutorial misconduct is without merit, counsel cannot be found deficient for failing to raise a futile objection.

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, the Court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

17

Here, the state court, in denying Dobra's post-conviction motion, stated: "At trial, Complainant[s], [C.S.] and [T.S.], testified to the sexual touching. Given this testimony, Defendant has failed to demonstrate that the alleged errors would have changed the outcome of the trial." *Dobra*, No: 2002-183260-FH, at * 2. Considering the girls' testimony, the trial court concluded that any prejudice that could have resulted from the prosecution's closing comments was not outcome determinative.

Considered in context, the prosecutor's comments constituted proper comment upon the evidence and was not an attempt to bolster the credibility of the witnesses. The challenged comments were made in response to the defense's theory of fabrication.

Moreover, this was a bench trial. It must be presumed that the trial court understood that the attorney's closing argument was not evidence to be used in determining guilt.

The Court therefore concludes that Dobra failed to demonstrate constitutional error. He is not entitled to habeas relief regarding his prosecutorial-misconduct claim.

### E. Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U .S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong . . . . When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner

shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that reasonable jurists would not find its assessment of Dobra's claims debatable or wrong. Nor would reasonable jurists debate whether the Court's procedural-default ruling was correct. The Court therefore declines to issue Dobra a certificate of appealability and denies him an application for leave to proceed on appeal *in forma pauperis*.

### IV. CONCLUSION

The state courts's decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Dobra has failed to establish that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, **IT IS ORDERED** that Dobra's petition for a writ of habeas corpus [dkt. # 1] is **DENIED**.

**IT IS FURTHER ORDERED** that the Court declines to issue Dobra a certificate of appealability and denies him an application for leave to proceed on appeal *in forma pauperis* because any appeal would be frivolous. *See* Fed.R.App.P. 24(a).

Dated: November 23, 2010

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 23, 2010, by electronic and/or ordinary mail and also to Franklin Dobra #186732, Cooper Street Correctional Facility, 3100 Cooper Street, Jackson, MI 49201.

S/Josephine Chaffee
Deputy Clerk

---